CRAMPTON ET AL. v. COLLYERS ET AL.

[No. 11,332.    Filed June 7, 1922.    Rehearing denied October 12, 1922.]

1. MORTGAGES.— *Foreclosure.— Constructive Service.— Personal Judgment for Deficiency.—Validity.*—Where defendants in a proceeding to foreclose a mortgage on realty were in court only by constructive service, the proceeding was essentially *in rem*, and, while it was within the province of the court to find the amount remaining due on the note and to order a sale of the mortgaged premises in satisfaction thereof, it had no power to render any personal judgment, or any judgment, for any excess remaining unpaid after the sale of the mortgaged premises. p. 585.

2. MORTGAGES.—*Foreclosure.—Constructive Service.—Judgment. —Satisfaction.—Sale of Mortgaged Premises.*—A mere judgment for the foreclosure of a mortgage on realty, rendered after constructive service on defendants, is exhausted by the sale of the mortgaged premises, and no right of action can thereafter be based upon the judgment.    p. 585.

From Martin Circuit Court; *James W. Ogdon,* Judge.

Action by Harry Crampton and others against Lillie M. Collyers and others.    From a judgment for defendants, the plaintiffs appeal.    *Reversed.*

*Carlos T. McCarty* and *L. D. Leveque,* for appellants. *J. B. Marshall,* for appellees.

ENLOE, J.—This was an action brought by the appellant Harry C. Crampton to quiet title to certain real estate.    It appears from the record herein, that on and prior to August 17, 1908, one Mitchell H. Ewers was the owner in fee simple and in possession of the real estate in controversy; that on said date said Ewers executed his promissory note in the sum of $2,500 due three years after date, and payable to John D. Morehead and Alfred H. Guthrie, and that to secure the payment of said note when the same should become due said Ewers and his wife, Jennie F. Ewers, executed a mortgage upon the real estate in controversy; that said note and

the mortgage securing the same, was by said Morehead and Guthrie, sold and transferred to one Alfred Guthrie, Sr., and that later said note and mortgage came into the hands of The Stone City Bank of Bedford, Indiana; that prior to February 16, 1916, the said Mitchell H. Ewers and wife had sold and conveyed the said lands so mortgaged; that in February, 1916, said bank claiming to be the owner and holder of said note and mortgage, brought suit in the Martin Circuit Court to foreclose said mortgage, naming as parties defendants in said suit, the said Ewers and wife, with others, their grantees near and remote; that the said defendants were notified of the filing and pendency of said suit by publication only and none of them appeared in said proceedings or filed any answer and suffered judgment to be taken against them by default; that in said foreclosure proceedings the court found that there was due and owing on the mortgage debt the sum of $2,931.97, and a decree was entered ordering said property sold and the proceeds thereof applied, first to the payment of the costs of this suit; second, for the payment of the mortgage note with interest thereon, and third, the overplus to be deposited with the clerk of the court for the use of the persons lawfully entitled thereto.

It further appears that a copy of said decree was duly issued to the sheriff of said county and that after due notice the said sheriff did on January 13, 1917, sell said real estate at public auction to one Lillie M. Collyer, one of the appellees herein, for the sum of $750, and executed to said purchaser his sheriff's certificate of purchase.

It further appears that thereafter the appellant Harry C. Crampton became the owner of said real estate by purchase as a remote grantee of said Mitchell H. Ewers and wife, and that as such owner, on January 11, 1918, he redeemed said real estate from said sheriff's sale by

paying to the clerk of the Martin Circuit Court for the use of said Lillie M. Collyer, the money due her upon said certificate of purchase, which fact or redemption was duly entered upon the records in the office of said clerk. No judgment or decree of any kind or character other than that hereinbefore referred to as taken in the foreclosure of said mortgage, was ever rendered in the Martin Circuit Court against said Ewers and wife on said note.

On January 11, 1918, the said bank executed an instrument wherein and whereby it attempted to transfer and assign its said judgment to Lillie M. Collyer, Melvina Malott, Carrie Crim, Ella G. Morehead, Jennie Guthrie, Administratrix of the estate of Melvin T. Guthrie, and Daniel D. Guthrie, Guardian of Blaine Guthrie.

It is the contention of the appellees, Lillie M. Collyer *et al.* to whom said assignment was made that as the said lands did not sell for a sufficient sum to pay the full amount of said mortgaged indebtedness, the said judgment was a continuing and subsisting lien against said real estate, and that after the same was redeemed, as hereinbefore set out, they were entitled to have said lands again subjected to execution and to be sold to satisfy the unsatisfied portion of said mortgage indebtedness. It was primarily for the purpose of quieting his title against this claim that this suit was brought by appellant Crampton. Various pleadings were filed by the parties, not necessary to be herein set out. There was a trial by the court and a finding that the appellant Crampton was not entitled to have his said title quieted as against the appellees, Collyer *et al.,* assignees of said judgment, and also a finding that the said assignees of said judgment were entitled to have said lands subjected to sale under an alias execution to enforce the payment of the balance due on their judgment. There was a

decree accordingly from which, after a motion for a new trial was overruled, this appeal is prosecuted.

The errors assigned and presented are: (1) Error in overruling demurrer to cross-complaint of Lillie M. Collyer *et al.*; (2) error in overruling the motion for a new trial.

The theory of the cross-complaint of Lillie M. Collyer *et al.* is disclosed by what we have heretofore said. The validity of this contention requires an examination of the nature and effect of the original foreclosure decree. It will be noted that in said foreclosure proceedings the parties defendant thereto were in court only by constructive service, and being only so in court the proceeding was essentially *in rem.* It was within the province of the court in that case to *find* the amount remaining due upon said note and *to order a sale of the mortgaged premises in satisfaction thereof,* but the court had no power to render any personal judgment, or any judgment, as for any excess remaining unpaid after said premises should be sold. As said in *Lipperd .v. Edwards* (1872), 39 Ind. 165, "A mere judgment of foreclosure, without any personal judgment, after applying the proceeds of the sale, is exhausted by the sale of the mortgaged premises, and cannot become the foundation of another action, for the purpose of making the balance of the debt secured by the mortgage. It is merely a judgment *in rem,* and when the property has been sold, the judgment has no more vitality."

The said decree of foreclosure having been exhausted by the sale of the premises thereunder, it necessarily follows that the appellees, Collyer *et al.* can base no rights thereon as against the appellant Crampton, and the court erred in overruling his demurrer to the said cross-complaint. The judgment is therefore reversed with instructions to the trial court to sustain the motion

of appellant Crampton for a new trial, and to sustain demurrer of appellant Crampton to the said cross-complaint of appellees, Collyer *et al.*, and for further proceedings not inconsistent with this opinion.